**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **The Catholic Mutual Relief Society of America,**<br><br>**Plaintiff,**<br>**v.**<br><br>**The Roman Catholic Diocese of Baton Rouge; The Diocese of Houma-Thibodaux; The Diocese of Lafayette; The Diocese of Lake Charles; and Doe State Court Plaintiffs #1-5, individually and on behalf of all other similarly situated State Court Plaintiffs suing the Diocese of Alexandria or its parishes, the Roman Catholic Diocese of Baton Rouge or its parishes, the Diocese of Houma-Thibodaux or its parishes, the Diocese of Lafayette or its parishes, or the Diocese of Lake Charles or its parishes,**<br><br>**Defendants.** | **Complaint-Class Action**<br><br>**[case no.]**<br><br>**Judge [ ]**<br><br>**Magistrate [ ]** |

**VERIFIED CLASS ACTION COMPLAINT TO COMPEL ARBITRATION AND FOR DECLARATORY RELIEF AND OTHER RELIEF**

Plaintiff, the Catholic Mutual Relief Society of America ("Catholic Mutual" or "Plaintiff") submits this Verified Class Action Complaint (1) against certain individual defendants, to compel arbitration under certain certificates of coverage and (2) against the individual defendants and a defendant class, for a declaratory

judgment (a) that Catholic Mutual is not an insurance company subject to the rules and regulations of the Louisiana Insurance Code, and (b) that certain coverages for periods prior to 1990 are exhausted by the prior payment of claims. In support, Catholic Mutual states as follows:

**Introduction**

1. This action seeks to compel arbitration of certain disputes under the Federal Arbitration Act, 9 U.S.C. § 4, against the Diocese Defendants, defined below, and for a declaratory judgment under 28 U.S.C. § 2201 against the Diocese Defendants and the Claimant Defendant Class, as defined below. The claims against the Claimant Defendant Class are brought pursuant to Fed. R. Civ. P. 23(b)(1) and 23(b)(2).

2. The Diocese Defendants are named individually and consist of certain Roman Catholic dioceses located in the state of Louisiana for which Catholic Mutual formerly provided liability coverage (and does *not* include the Diocese of Alexandria, which has filed for bankruptcy reorganization and cannot be sued because of the automatic stay).

3. The Claimant Defendant Class is the class of individuals who have asserted claims or will assert claims on or before June 14, 2027, against any of the Diocese Defendants or the Diocese of Alexandria in bankruptcy, asserting that Diocese-affiliated individuals committed acts of sexual misconduct toward members

of the Claimant Defendant Class during the time periods that Catholic Mutual had issued coverage to the Diocese Defendants.

4. Certain Diocese Defendants and the Diocese of Alexandria in bankruptcy have tendered to Catholic Mutual for defense and indemnification the claims of members of the Claimant Defendant Class, under certificates of coverage that were issued by Catholic Mutual to the Diocese Defendants and the Diocese of Alexandria in bankruptcy, and that included associated Catholic entities (such as Catholic parishes and schools) as protected parties.

5. Catholic Mutual has received subpoenas from certain members of the Claimant Defendant Class seeking information relating to its coverage of the Diocese Defendants, the Diocese of Alexandria, and a Diocese for which Catholic Mutual never provided any coverage, as well as any potential protected parties.

6. The certificates of coverage issued by Catholic Mutual from 1990 to 2024 to the Diocese Defendants contain a valid and enforceable arbitration clause that survives the termination of Catholic Mutual's coverage. A dispute has arisen that relates to those certificates and Catholic Mutual seeks to compel arbitration of any such dispute, as contractually agreed in those certificates.

7. Catholic Mutual further seeks declarations, against all defendants (including the Diocese Defendants and members of the Claimant Defendant Class), (1) that Catholic Mutual (a self-insurance fund of member Catholic Church entities)

is not subject to the provisions of the Louisiana Insurance Code or to regulation by the Louisiana Department of Insurance, and (2) that Catholic Mutual owes no coverage under the terms of its "occurrence" certificates issued during 1986-1990.

**Jurisdiction and Venue**

8. This Court has jurisdiction of this case under 28 U.S.C § 1332(a) because the amount in controversy (in each of the underlying claims against a Diocese or additional protected party) exceeds $75,000.00, exclusive of interest and costs, and the controversy is between citizens of different states. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 if any claims herein fall outside 28 U.S.C § 1332(a), because the claims are so related that they form part of the same case or controversy.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391 because some of the Defendants reside in this District and because a substantial part of the events giving rise to this controversy occurred in this District.

**The Parties**

**A. Catholic Mutual**

10. Plaintiff Catholic Mutual is a nonprofit corporation organized under the laws of the State of Nebraska (specifically, the Nebraska Nonprofit Corporation Act), with its principal place of business in Nebraska, and is a religious and charitable benevolent association operated by an ecclesiastical body. It has no shareholders.

11. Catholic Mutual issues certificates of coverage ("Certificates") to participating entities (referred to as "certificate holders" or "members"), limited to entities within the Roman Catholic Church in the United States and Canada. The Certificates provide for coverage for certain property and casualty risks, subject to the Certificates' terms and conditions. Facts about Catholic Mutual and its Certificates include the following:

(a) The Certificates are generally issued to Catholic dioceses. Associated Catholic parishes, schools, etc. within the certificate holder dioceses are included as additional protected parties.

(b) Catholic Mutual does not market to or provide coverage to any non-Catholic entities, and eligibility is strictly limited to religious entities that: (1) are controlled by the Catholic Church; (2) are Catholic in nature and operation; (3) qualify or will qualify as religious non-profit entities under 26 U.S.C. § 501(c)(3) and IRS Guidelines; and (4) are eligible for inclusion within the Official Catholic Directory based on criteria set by the United States Conference of Catholic Bishops (USCCB).

(c) Catholic Mutual's Restated and Amended Articles of Association set forth its characteristics. Catholic Mutual, by virtue of its affiliation with the Catholic Church of North America, holds a 26 U.S.C. § 501(c)(3) designation from the IRS, making it tax-exempt. A true and correct copy of Catholic

Mutual's Restated and Amended Articles of Association is attached hereto as **Ex. A**. A true and correct copy of the IRS's ruling reflecting this tax-exempt status is attached hereto as **Ex. B**.

(d) Catholic Mutual's Board of Trustees consists of the bishops and archbishops of 18 dioceses or archdioceses from across the United States and Canada. A true and correct copy of a current list of the current members of Catholic Mutual's Board of Trustees is attached hereto as **Ex. C**.

(e) Catholic Mutual's current members include 112 Catholic dioceses and archdioceses in North America.

(f) Catholic Mutual formerly provided coverage to many Catholic dioceses in the state of Louisiana. Catholic Mutual did not renew its Certificates to any then current member diocese in Louisiana in 2024. This action concerns what, if any, ongoing rights and obligations under the Certificates exist post non-renewal.

**B. The Diocese Defendants.**

12. The Diocese Defendants, named individually, are:

(a) The Roman Catholic Diocese of Baton Rouge, a non-profit religious corporation incorporated in Louisiana and whose principal place of business is in Louisiana;

(b) The Diocese of Houma-Thibodaux, a non-profit religious corporation incorporated in Louisiana and whose principal place of business is in

Louisiana;

(c) The Diocese of Lafayette, a non-profit religious corporation incorporated in Louisiana and whose principal place of business is in Louisiana; and

(d) The Diocese of Lake Charles, a non-profit religious corporation incorporated in Louisiana and whose principal place of business is in Louisiana.

13. Catholic Mutual issued Certificates to each of the following former members:

(a) Catholic Mutual issued Certificates to nondefendant Diocese of Alexandria in bankruptcy from 1988 to 2024.

(b) Catholic Mutual issued Certificates to Diocese Defendant the Roman Catholic Diocese of Baton Rouge from 1986 to 2024.

(c) Catholic Mutual issued Certificates to Diocese Defendant the Diocese of Houma-Thibodaux from 1986 to 2024.

(d) Catholic Mutual issued Certificates to Diocese Defendant the Diocese of Lafayette from 1996 to 2024

(e) Catholic Mutual issued Certificates to Diocese Defendant the Diocese of Lake Charles from 1987 to 2024.

**C. The Claimant Defendant Class**

14. The Claimant Defendant Class consists of all claimants who have filed unresolved claims in Louisiana state courts, or who will file before the current

deadline to file otherwise time-barred claims passes, against the Diocese of Alexandria in bankruptcy, the Roman Catholic Diocese of Baton Rouge, the Diocese of Houma-Thibodaux, the Diocese of Lafayette, or the Diocese of Lake Charles, and/or against associated Catholic entities, such as parishes and schools, within these dioceses, and who have alleged abuse during the existence of any Catholic Mutual Certificate of coverage.

15. Specifically, the Claimant Defendant Class is defined as:

> All State Court Plaintiffs who have asserted a claim, or will assert a claim on or before June 14, 2027, against the Diocese of Alexandria in bankruptcy, the Diocese of Baton Rouge, the Diocese of Houma-Thibodaux, the Diocese of Lafayette, or the Diocese of Lake Charles, or affiliated Catholic entities, for abuse that allegedly occurred between the date of each Diocese's becoming a member of Catholic Mutual and the date in 2024 when Catholic Mutual did not renew its coverages of these Dioceses.

16. Plaintiff brings this action as a class action, under the provisions of Rule 23 of the Federal Rules of Civil Procedure, against Doe #1, Doe #2, Doe #3, Doe #4, and Doe #5, individually and as representatives of the foregoing Claimant Defendant Class.

(a) Doe #1 is a citizen of Louisiana. Doe #1 is the plaintiff in the lawsuit *John S.S. Doe v. Diocese Defendant et al.*, pending in the Ninth Judicial District, Rapides Parish (Case No. 277,460).

(b) Doe #2 is a citizen of Louisiana. Doe #2 is the plaintiff in the lawsuit *B.M.V. v. Diocese of Baton Rouge, et al.,* pending in the Nineteenth Judicial

District, East Baton Rouge Parish (Case No. 2025-c-769807).

(c) Doe #3 is a citizen of Louisiana. Doe #3 is the plaintiff in the lawsuit *T.H.M. v. Diocese of Houma-Thibodaux, Holy Savior Catholic Church, and Priest John Doe*, pending in the Seventeenth Judicial District Court, Lafourche Parish (Case No. 2025-C-153100).

(d) Doe #4 is a citizen of Louisiana. Doe #4 is the plaintiff in the lawsuit *J.G.F. v. Diocese of Lafayette, St. Jules Catholic Church, et al.,* pending in the Fifteenth Judicial District Court, Lafayette Parish (Case No. C-20255157).

(e) Doe #5 is a citizen of Louisiana. Doe #5 is the plaintiff in the lawsuit *J.C.S. v. Diocese of Lake Charles, et al.,* pending in the Fourteenth Judicial District, Calcasieu Parish (Case No. C-2025-4467).

17. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of its claims against members of the Claimant Defendant Class on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

18. This action has been brought and may be properly maintained against the Claimant Defendant Class proposed herein under Federal Rule of Civil Procedure 23.

## Class Action Allegations

### A. The Proposed Clamant Defendant Class.

19. Catholic Mutual brings this action as a class action against a proposed class of Claimant Defendants.

20. Catholic Mutual proposes Doe #1, Doe #2, Doe #3, Doe #4, and Doe #5 as the representatives of the Claimant Defendant Class.

### B. The Rule 23(a) Requirements.

#### 1. Numerosity.

21. The members of the Claimant Defendant Class are so numerous and geographically dispersed that individual joinder of all members is impracticable.

22. Plaintiff is informed and believes that there are hundreds of members of the Claimant Defendant Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendants' records. Members of the Claimant Defendant Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

#### 2. Commonality.

23. This action involves common questions of law and fact applicable to all individual members of the Claimant Defendant Class, including without limitation:

(a) Whether Catholic Mutual is a self insurance fund of the Roman

Catholic Church and thus not subject to the Louisiana Insurance Code;

(b) Whether Catholic Mutual's Certificates of coverage issued to the Diocese Defendants prior to 1990 all contained substantially the same terms and conditions, and excluded coverage for sexual abuse; and

(c) Whether Catholic Mutual's Certificates of coverage issued to the Diocese Defendants prior to 1990 contained substantially the same terms and conditions, provided limited coverage subject to an aggregate limit for sexual abuse claims, and have been exhausted by the prior payment of claims.

**3. Typicality.**

24. Plaintiff's claims against each member of the Claimant Defendant Class are typical of the claims against other members of the Claimant Defendant Class because, among other things, all such members were similarly situated and were subject to identical terms and conditions.

**4. Adequacy of Representation.**

25. The proposed Claimant Defendant Class representatives are adequate because their interests do not conflict with the interests of other class members. They have retained counsel who are competent and experienced in complex litigation of this kind. The interests of the Claimant Defendant Class will be fairly and adequately protected by these representatives and their counsel.

**C. The Rule 23(b) Requirements.**

26. This is an appropriate class action under Fed. R. Civ. P. 23(b)(1)

because:

(a) Prosecuting separate actions against individual members of the proposed Claimant Defendant Class would create a risk of inconsistent results and incompatible standards of conduct for Catholic Mutual; and

(b) adjudication of these claims against a single class member could as a practical matter be dispositive of the interests of other class members.

27. This is an appropriate class action under Fed. R. Civ. P. 23(b)(2) because

(a) Catholic Mutual (the party opposing the class) has acted in the same manner, on the issues presented in this case, toward all the class members; and

(b) final declaratory relief is appropriate respecting the class as a whole.

## General Allegations

### A. The Catholic Mutual Certificates.

28. Catholic Mutual began issuing Certificates to the following Dioceses as follows:

(a) for the Diocese of Alexandria in bankruptcy effective November 1, 1988 (**Ex. D**);

(b) for the Diocese of Baton Rouge effective July 1, 1986 (**Ex. E**);

(c) for the Diocese of Houma-Thibodaux effective July 1, 1986 (**Ex.**

**F**);

(d) for the Roman Catholic Diocese of Lafayette effective April 1, 1996; and

(e) for the Diocese of Lake Charles effective July 1, 1987 (**Ex. G**).

**1. The Occurrence-Based Certificates (1986-1990).**

29. During 1986 to 1990, Catholic Mutual issued "Occurrence-Based Certificates," providing liability protection on an occurrence basis. These Certificates obligated Catholic Mutual to pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . caused by an occurrence" during the Certificates' coverage period.

30. Catholic Mutual issued Occurrence-Based Certificates to the following Dioceses: Alexandria in bankruptcy, Baton Rouge, Houma-Thibodaux, and Lake Charles.

31. The main provisions of the Occurrence-Based Certificates provide no coverage for liability for sexual wrongs. Every Occurrence-Based Certificate (both general liability and umbrella/excess) issued by Catholic Mutual to these Diocese Defendants contains (either in the coverage form or in an endorsement) a provision that the coverage does not apply "to any and all liability" resulting from sexual misconduct.

32. For example, the first certificate of coverage that was issued to the

Diocese of Alexandria was effective for the period November 1, 1988 to November 1, 1989. The November 1, 1988 Alexandria Certificate contains the following exclusion in the "Liability Coverage" provisions:

> **Exclusions**
>
> This coverage does not apply:
>
> . . . .
>
> (t) to any and all liability resulting from any actual, attempted or alleged conduct or contact of a sexual nature, including negligent or intentional infliction of mental or emotional anguish, harm, injury or distress of any kind.

**Ex. D** at CM-A000046.

33. The November 1, 1988 Alexandria Certificate contains the following exclusion in the "Umbrella Excess Liability Certificate" provisions:

> **Exclusions**
>
> This Certificate shall not apply:
>
> . . . .
>
> (j) to any and all liability resulting from any actual, attempted or alleged conduct or contact of a sexual nature, including negligent or intentional infliction of mental or emotional anguish, harm, injury or distress of any kind.

**Ex. D** at CM-A000068.

34. For the Diocese of Alexandria, sexual misconduct or sexual abuse coverage was excluded from coverage in every Certificate, with the same or similar language, until Catholic Mutual terminated its coverage of the Diocese of

Alexandria.

35. Catholic Mutual utilized the same or similar sexual misconduct or sexual abuse exclusion language in the Certificates for the Dioceses of Baton Rouge (**Ex. E,** CM-BR 000028, 000058); Houma-Thibodaux (**Ex. F**, CM-H-T000027, 000058); and Lake Charles (**Ex. G**, CM-LC000052, 000094).

36. Beginning on November 1, 1998, on an annual basis only up to the point when Catholic Mutual's coverages switched to Claims-Made, Catholic Mutual provided the Diocese of Alexandria a separate coverage known as "Morality" coverage.

37. This separate "Morality" coverage had a yearly aggregate limit of either $100,000 or $75,000 (due to the applicability of a deductible) in a defense-within-limits or "wasting" limits cover. The Morality form stated:

> In consideration of the charges made, the Society agrees, subject to the limitations specified below, to pay on behalf of the Archdiocese/Diocese or on behalf of the Ordinary thereof (the Protected Persons) any damages either may become legally obligated to pay as a result of any actual, attempted or alleged conduct or contact of a sexual nature, including negligent or intentional infliction of mental or emotional anguish, harm, injury or distress of any kind caused by anyone other than the Protected Persons.
>
> The coverage afforded by this form shall be limited to $100,000 in the aggregate and shall include payments for damages, legal fees and all other loss adjustment and defense costs.

**Ex. D** at CM-A 000057.

38. The same type of Morality coverage form was used with the Dioceses

of Baton Rouge, Houma-Thibodaux; and Lake Charles. **Ex. F**, CM-H-T-000046, **Ex. E**, CM-BR-000046, **Ex. G**, CM-LC-000071.

39. The aggregate coverage limit of this separate coverage in each Occurrence-Based Certificate issued to the Dioceses of Alexandria in bankruptcy, Baton Rouge, Houma-Thibodaux, and Lake Charles has been exhausted by either the payment of claims or Catholic Mutual's proposed tender of remaining available limits.

**2. The Claims-Made Certificates (1990-2024).**

40. Catholic Mutual issued "Claims-Made Certificates" to all of the Diocese Defendants and non-defendant Diocese of Alexandria in bankruptcy during the period from 1990 until 2024 (with the Diocese of Lafayette joining effective April 1, 1996).

41. Catholic Mutual's Claims-Made Certificates issued to each Diocese Defendant and to non-defendant Diocese of Alexandria in bankruptcy provide limited coverage for Sexual Misconduct Claims, but only if the claim is made and reported during the Certificate period and does not involve any alleged misconduct before the Certificate's "retroactive date" of July 1, 1990.

42. Specifically, the 2023-2024 Claims-Made Certificate states:

> [Catholic Mutual agrees] to pay on behalf of the ***Certificate Holder*** or any other ***Protected Person(s)***, all ***Loss*** it or they may become legally obligated to pay as a result of a ***Sexual Misconduct Claim***. Provided, however, that this Limited Sexual Misconduct Protection applies only

> to ***Sexual Misconduct Claims*** first made during the coverage period provided herein and arising from ***Incidents*** . . . . [but not for any] [l]oss resulting or arising from or related to an ***Incident*** if any aspect of any such ***Incident*** actually or allegedly took place prior to the retroactive date applicable to this Section. . . . ***Sexual Misconduct Claim*** means a demand for ***Money*** made by any ***Claimant*** . . . communicated to the ***Certificate Holder*** or any ***Protected Person*** orally or in writing.

*See* **Exs. H-L** (emphases in original).

43. The 2023-2024 Claims-Made Certificate contains a valid and binding agreement to arbitrate any dispute about Catholic Mutual's obligations under the Claims-Made Certificates:

> 16. SUIT AGAINST US
>
> We may not be sued under this certificate by the *Certificate Holder* or *Protected Person*. The *Certificate Holder's* or *Protected Person's* sole remedy for all disputes against us shall be as set out in Section 17 of the General Conditions.
>
> . . . .
>
> 17. DISPUTE RESOLUTION.
>
> This Certificate is not intended to benefit any third party and, as such, it creates no rights in anyone other than a *Certificate Holder* or *Protected Person(s).*
>
> Any unresolved difference between a *Certificate Holder* or *Protected Person(s)* and us, including but not limited to participation, termination or cancellation, coverages, defenses, or interpretations of Certificate language shall be subject to resolution only as herein provided.
>
> Any dispute shall first be submitted by you in writing to the President of Catholic Mutual Relief Society of America, with a copy to the Chairman of its Board of Trustees.
>
> If the President is unable to resolve the dispute to your satisfaction within 30 days after submittal to him, you may appeal in writing within

> 30 days thereafter to the Chairman of the Board of Catholic Mutual Relief Society of America. The Chairman shall thereupon appoint an arbitration committee (the Arbitration Committee) consisting of:
>
> (a) Himself; and
>
> (b) Two (2) other members of the Board of Trustees who are not involved in the dispute.
>
> The Arbitration Committee will review the appeal and finally resolve the matter within ninety (90) days after submittal to the Chairman.
>
> The Arbitration Committee shall not be bound by judicial formalities and, in addition to considering applicable rules of law, the customs and practices of the self-insurance and insurance industry and such other expert or other evidence as it deems appropriate to resolve the issue fairly, it shall make its decision with a view to effecting the underlying intent of the Catholic Mutual program of self-insurance which is to best protect the material assets of all the Certificate Holders participating in the Catholic Mutual program.
>
> Failure to pursue an appeal at any level within the time specified shall constitute a waiver of the right to appeal. The decision of the President or Arbitration Committee, as applicable, shall be final and binding on you and us.

Excerpts of the final Claims-Made Certificates are attached hereto as **Exs. H-L**.

### B. The Claimant Defendants' Assertion of Revived Childhood Sexual Abuse Claims Against the Diocese Defendants.

44. In 2021, the Louisiana Child Victims Act, La. R.S. § 9:2800.9, was signed into law, reviving claimants' right to assert previously time-barred claims of alleged childhood sexual abuse.

45. This statutory revival window was initially set to expire in June 2024 but has been extended another three years, to June 14, 2027.

46. Thousands of such previously time-barred claims have been brought

against Roman Catholic entities in the State of Louisiana, including many alleging abuse by individuals associated with the Diocese Defendants and the Diocese of Alexandria in bankruptcy.

47. The Diocese Defendants (and other Louisiana dioceses, such as the Diocese of Alexandria in bankruptcy) have tendered approximately 90 such sexual abuse lawsuits to Catholic Mutual since the expiration of Catholic Mutual's coverages in 2024:

(a) The Diocese of Alexandria in bankruptcy has tendered approximately 67 suits.

(b) The Diocese of Baton Rouge tendered approximately 10 suits.

(c) The Diocese of Lake Charles tendered approximately 12 suits.

(d) The Dioceses of Houma Thibodaux and Lafayette have not yet (as of this filing) tendered any suits.

48. To the extent that any remaining aggregate limits remained on the occurrence-based coverage, Catholic Mutual agreed to defend the relevant Dioceses and tendered the remaining limits thereby exhausting all available coverage. Catholic Mutual has denied coverage in response to all the other tenders.

49. The tender of the remaining limits to the Diocese of Alexandria in bankruptcy may be subject to jurisdiction of the bankruptcy court overseeing those proceedings.

50. Every claim for which Catholic Mutual has denied coverage asserts abuse occurring:

(a) before the effective date of any Certificate issued by Catholic Mutual to any Diocese Defendant;

(b) during a period when an Occurrence-Based Certificate's limited Morality coverage has been exhausted; or

(c) after the 1990 change to Claims-Made Certificates, but without the claim being made during the Certificate period.

51. On information and belief, a significant number of additional claims falling in these three categories may yet be tendered while the revival window remains open.

52. Disputes exist and will continue to arise over whether Catholic Mutual owes the Diocese Defendants coverage obligations under the Claims-Made Certificates.

**C. Catholic Mutual's Structure as a Mutual Benefit Organization Rather than an Insurance Company.**

53. The Certificates are expressly not insurance policies. All of the Certificates issued to the Diocese Defendants contain the following prominent legend:

> **THIS CERTIFICATE IS NOT A POLICY OF INSURANCE. IT EVIDENCES YOUR PARTICIPATION IN A SELF-PROTECTION PROGRAM OF THE ROMAN CATHOLIC**

> **CHURCH IN THE UNITED STATES. NO PROTECTION IS PROVIDED HEREUNDER EXCEPT TO THOSE AGENCIES AND INSTRUMENTALITIES AND THOSE EDUCATIONAL, CHARITABLE AND RELIGIOUS INSTITUTIONS OPERATED, SUPERVISED OR CONTROLLED BY THE ROMAN CATHOLIC CHURCH AND LISTED IN, OR ELIGIBLE FOR LISTING IN, THE OFFICIAL CATHOLIC DIRECTORY AND TO THE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS THEREOF WHILE ACTING WITHIN THE SCOPE OF THEIR DUTIES FOR SUCH AGENCIES, INSTRUMENTALITIES AND INSTITUTIONS.**

*See* **Exs. H-L** (bold and all-caps in original).

54. This kind of conspicuous contract term is enforceable between the parties.

55. This express provision reflects the reality of the parties' function and relationship.

56. Catholic Mutual is a church-based mutual benefit organization, historically recognized as distinct from an insurer because it does not enter into insurance contracts with the public.

57. A copy of Catholic Mutual's current Restated and Amended Articles of Association is attached hereto as **Ex. A**. The Articles show the following:

(a) Article III provides that Catholic Mutual is "a nonprofit, religious and charitable Benevolent Association, operated by an Ecclesiastical Body, composed of Members of the Hierarchy of the Roman Catholic Church . . . for the protection and preservation of the properties of such Church," and that it "aid[s] and

assist[s] the Members of the Hierarchy and Religious in the discharge of their Canonical Duties." This organizational purpose is fundamentally different from that of an entity formed to transact insurance with the public. Instead, Catholic Mutual exists solely to serve the internal needs of Catholic dioceses (and their associated entities such as parishes and schools) and religious orders, subject to the terms and conditions of the Certificates.

(b) Article III(a) empowers Catholic Mutual to "accumulate, invest, enlarge and husband a common central fund for the preservation and protection of the properties of its Members." Such a pooled central fund is an example of self-insurance structure, in which

(i) Members contribute to a shared fund in connection with receiving a certificate of coverage that specifies the covered risks;

(ii) Losses are paid from that fund upon the occurrence of a loss that is within the scope of the certificate of coverage;

(iii) No transfer of risk to a third-party occurs.

(c) This structure is distinct from a regulated insurer that issues contracts to third parties to assume their risks and spread the risks among many insured parties.

(d) Article III(b) authorizes Catholic Mutual to "extend Relief to its Members . . . in any misfortune, calamity, disaster, damage, destruction or loss, in

the judgment of its Officers or its Board of Trustees." "Relief" payments are incompatible with the legal concept of "insurance" (which requires a binding indemnity agreement), because they are expressly discretionary, subject to the judgment of the Trustees (diocesan bishops or archbishops per Article VI), rather than provided by contract. For example:

(i) A Member occasionally agrees to accept less than an actual loss, such as an instance when a destroyed building was no longer needed, and the member accepted a smaller sum to build a much smaller structure, saving Catholic Mutual over $10,000,000.

(ii) Catholic Mutual occasionally makes a discretionary relief payment outside the scope of the Certificate issued to the member, such as a recent $40,000 payment to assist a member with legal fees in a coverage disagreement related to earth movement and foundation settling.

The ability to make discretionary Relief payments is an example of how Catholic Mutual differs from an insurance company.

(e) Article III(j) authorizes Catholic Mutual:

> To render advice in connection with insurance programs . . . but without itself issuing or writing insurance contracts, or being itself an insurance company, agent or broker.

This provision confirms that Catholic Mutual was intentionally structured not to engage in the business of insurance. The explicit prohibition on "issuing or writing

insurance contracts" and on "being . . . an insurance company" demonstrates organizational intent to avoid activities regulated as insurance.

(f) Membership in Catholic Mutual is limited to eligible Catholic dioceses or religious orders, and is not available to any member of the public. Under Article V, only an "Ordinary" [Bishop] or a "Superior" (religious terms signifying someone with canonical authority from Rome) may join, and they do so by making contributions (not by paying insurance premium).

(g) Article VII provides that:

> This Society, being purely mutual, shall have no capital stock and shall be non-profit and charitable . . . . No person . . . shall . . . be entitled to any special dividend or benefit . . . .

A purely mutual, non-profit benevolent association that pays no dividends and provides no financial profit is not analogous to an insurer, which typically must maintain capital, reserves, and solvency to support contractual obligations. This structure signifies mutual aid, not insurance.

(h) Article VII further provides that:

> No Officer . . . shall have power to contract debts or assume liabilities . . . for or in the name of the Society . . . except . . . to temporarily place the Society in funds to pay Requests for Relief.

This means that Officers cannot bind Catholic Mutual to indemnify losses contractually—the hallmark of insurance. "Requests for Relief" again underscores the benevolent, non-contractual nature of payments.

(i) Article III(m) authorizes Catholic Mutual:

> To operate as an adjunct or instrument of the Church with respect to the preservation and protection of its properties . . . .

This means that Catholic Mutual does not function as an independent insurance enterprise. Its sole mission is to serve the internal administrative needs of the Church regarding protection of Church property, subject to the terms and conditions of the Certificates. Louisiana insurance regulation is aimed at entities that transact with the public, not entities acting as part of a religious organization.

## Claims for Relief

### Count I
### (Against the Diocese Defendants and the Claimant Defendant Class):

### For a Declaratory Judgment Under 28 U.S.C. § 2201 that Catholic Mutual Is Not Subject to the Louisiana Insurance Code.

58. Catholic Mutual incorporates by reference the allegations set forth above at paragraphs 1 through 57 as though fully set forth herein.

59. The Federal Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

60. An actual and present controversy has arisen and now exists between Catholic Mutual and the Defendants (the Diocese Defendants and the Claimant

Defendant Class) over whether Catholic Mutual is an insurance company and whether its Certificates are insurance policies, subject to the Louisiana Insurance Code and regulation by the Louisiana Department of Insurance.

61. Catholic Mutual's Certificates are not subject to the Louisiana Insurance Code or to regulation by the Louisiana Department of Insurance, because Catholic Mutual is a nonprofit ecclesiastical benevolent association and not an insurance company as a matter of law.

62. The Louisiana Insurance Code applies to "insurers and other risk bearing entities." La. Rev. Stat., § 22:48. As a matter of law, Catholic Mutual does not fall within the categories of the Louisiana Insurance Code because, among other things, it functions as a self-funded program for the Roman Catholic Church in North America and does not issue insurance policies, as prominently and unmistakably stated in its Certificates and Articles of Association.

63. Because Catholic Mutual is a self-funded entity bearing 100% of the financial costs associated with its Certificates, it is not a risk-bearing entity under La. R.S. 22:48 and is therefore not regulated under the Louisiana Insurance Code.

64. Catholic Mutual therefore seeks a declaration that it is not an insurance company and that its Certificates are not insurance contracts subject to the Louisiana Insurance Code or to regulation by the Louisiana Department of Insurance.

65. Catholic Mutual has no adequate remedy at law and a judicial

declaration is necessary and appropriate at this time.

**WHEREFORE**, Catholic Mutual respectfully asks the Court to enter a declaratory judgment:

1. Holding that Catholic Mutual is not an insurance company subject to the Louisiana Insurance Code and to regulation by the Louisiana Department of Insurance, and that Catholic Mutual's Certificates are not insurance policies under Louisiana law.
2. Awarding to Catholic Mutual of all of its costs, expenses and attorneys' fees to the extent allowed by law; and
3. Awarding such other and further relief as the Court may deem just and proper.

**Count II**
**(Against the Diocese Defendants):**

**To Compel Arbitration Under the Federal Arbitration Act, 9 U.S.C. § 4.**

66. Catholic Mutual incorporates by reference the allegations set forth above at paragraphs 1 through 65 as though fully set forth herein.

67. The Claims-Made Certificates are contracts between Catholic Mutual and the Diocese Defendants and include a written contractual agreement to arbitrate any disputes between them relating to the Certificates.

68. The Federal Arbitration Act ("FAA") provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

69. Catholic Mutual's and the Diocese Defendants' agreement in the Claims-Made Certificates to arbitrate any disputes is such a written provision under FAA § 2, and there are no grounds in law or in equity for revocation of this contractual agreement to arbitrate.

70. The FAA authorizes this Court to compel arbitration. 9 U.S.C. § 4.

**WHEREFORE**, Catholic Mutual respectfully asks the Court to enter an order:

1. Compelling the Diocese Defendants to arbitrate all disputes concerning Catholic Mutual's obligations under the Claims-Made Certificates;
2. Awarding to Catholic Mutual all of its costs, expenses and attorneys' fees to the extent allowed by law; and
3. Awarding such other and further relief as the Court may deem just and proper

**Count III**
**(Against the Diocese Defendants and the Claimant Defendant Class):**

**For a Declaratory Judgment Under 28 U.S.C. § 2201
that Catholic Mutual Owes No Duties to Defend or Indemnify
Under Its 1986-1990 Occurrence-Based Certificates.**

71. Catholic Mutual incorporates by reference the allegations set forth above at paragraphs 1 through 70 as though fully set forth herein.

72. An actual and present controversy has arisen and now exists between Catholic Mutual and the Diocese Defendants and Claimant Defendants concerning their respective rights and obligations under the Occurrence-Based Certificates issued by Catholic Mutual to the Dioceses of Alexandria in bankruptcy, Baton Rouge, Houma-Thibodaux, and Lake Charles during the period 1986-1990.

73. Catholic Mutual contends that, for the reasons set forth above at paragraphs 1 through 70, it has no coverage obligations toward the Diocese Defendants, in connection with existing lawsuits or claims, or any future lawsuits or claims, because the small amount of limited aggregate coverage has been exhausted.

74. Specifically, the only coverage for sexual misconduct in the Occurrence-Based Certificates is the limited Morality coverage, which has been exhausted.

75. On information and belief, the position of the Diocese Defendants and the Claimant Defendants Class is that Catholic Mutual owes duties under the Occurrence-Based Certificates regarding both (a) the existing sexual misconduct claims and (b) any future claims asserted while the revival window remains open.

76. Catholic Mutual has no possible obligations under the Occurrence-Based Certificates to the Diocese Defendants or the Claimant Defendant Class, because:

(a) the only coverage applicable to sexual misconduct claims that ever existed under the Occurrence-Based Certificates issued to the Dioceses of Alexandria in bankruptcy, Baton Rouge, Houma-Thibodaux, and Lake Charles is the limited Morality coverage, and

(b) the aggregate coverage limit of this limited Morality coverage under the Occurrence-Based Certificates issued to the Dioceses of Alexandria in bankruptcy, Baton Rouge, Houma-Thibodaux, and Lake Charles has already been exhausted.

77. Catholic Mutual seeks a judicial declaration, under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, of the respective rights and duties of the parties under the Occurrence-Based Certificates issued by Catholic Mutual to the Diocese Defendants, including that Catholic Mutual has no duty to defend against the Claimant Defendants' underlying suits or claims.

78. Catholic Mutual has no adequate remedy at law and a judicial declaration is necessary and appropriate at this time.

**WHEREFORE**, Catholic Mutual respectfully asks the Court to enter a declaratory judgment:

1. Declaring that Catholic Mutual owes no duties regarding the Claimant Defendant Class members' underlying suits or claims under the 1986-1990 Occurrence-Based Certificates issued to the Diocese Defendants, because:
   a. The only coverage applicable to sexual misconduct claims under the Occurrence-Based Certificates is limited Morality coverage with an aggregate coverage limit, subject to erosion by defense costs; and
   b. The aggregate coverage limit has been exhausted.
2. Awarding to Catholic Mutual all of its costs, expenses and attorneys' fees to the extent allowed by law; and
3. Awarding such other and further relief as the Court may deem just and proper.

Dated: November 17, 2026

Respectfully submitted:

BIENVENU, FOSTER, RYAN & O'BANNON, LLC

BY: *<u>/s/ JOHN W. WATERS</u>*

JOHN W. WATERS (#13258)
3801 Tall Pines Dr.,
New Orleans, LA 70131
Telephone: (504) 275-6329
Facsimile: (504) 310-1501
jwaters@bfrob.com

Everett J. Cygal (*pro hac vice forthcoming*)
Daniel J. Schufreider (*pro hac vice forthcoming*)
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7300
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
everett.cygal@afslaw.com
daniel.schufreider@afslaw.com

**VERIFICATION**

I, Paul A. Peterson, ARM, declare under penalty of perjury that: 1) I am the President and Chief Executive Officer of the Plaintiff, The Catholic Mutual Relief Society of America, in the foregoing Verified Complaint; 2) I have read the complaint, and know the contents thereof; and 3) the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 17th day of November, 2026.

Paul A. Peterson, ARM
President and Chief Executive Officer